IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| **ERIC D. LAMONS,** § | |
| Plaintiff, § | |
| § | |
| v. § | EP-20-CV-00094-ATB |
| § | |
| **ANDREW SAUL, COMMISSIONER OF** § | |
| **THE SOCIAL SECURITY** § | |
| **ADMINISTRATION,** § | |
| Defendant. § | |

**MEMORANDUM OPINION AND ORDER**

This is a civil action seeking judicial review of an administrative decision. Jurisdiction is predicated upon 42 U.S.C. § 405(g). Both parties having consented to trial on the merits before a United States Magistrate Judge, the case was transferred to this Court for trial and entry of judgment pursuant to 28 U.S.C. § 636(c) and Rule CV-72 and Appendix C to the Local Court Rules for the Western District of Texas.

Plaintiff Eric Lamons ("Lamons") appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Disability Insurance Benefits ("DIB"). For the reasons set forth below, the Court orders that the Commissioner's decision be **AFFIRMED**.

## I.   PROCEDURAL HISTORY

On July 23, 2018, Lamons filed an application for DIB, alleging a disability onset date of March 1, 2017. (R. 10). Lamons's application was denied initially on September 17, 2018, and upon reconsideration on November 20, 2018. (R. 15). An Administrative Law Judge ("ALJ") held a hearing on September 10, 2019. (R. 32-64). The ALJ issued a decision ("Decision") on

November 26, 2019, finding that Lamons was not disabled. (R. 21). On February 13, 2020, the Appeals Council denied Lamons's request for review of the ALJ's Decision. (R. 1-5).

## II.    ISSUE

Plaintiff presents the following issues for review:

> 1. Whether the ALJ properly considered Lamons's chronic migraines when formulating a limited range of light-work residual functional capacity (RFC);
>
> 2. Whether the ALJ appropriately found that Lamons had no medically required use of a walker;
>
> 3. Whether the ALJ ignored or failed to account for Lamons's chronic pain and pain syndrome when formulating the RFC; and
>
> 4. Whether the ALJ erred in assigning no weight to Lamons's 100 percent Veterans' Administration ("VA") Disability Rating.

## III.    DISCUSSION

### a.    Standard of Review

This Court's review is limited to a determination of whether the Commissioner's Decision is supported by substantial evidence, and whether the Commissioner applied the proper legal standards in evaluating the evidence. *See* 42 U.S.C. § 405(g); *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995). Substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. Nat'l Labor Relations Bd.*, 305 U.S. 197, 229 (1938)). "Substantial evidence is more than a mere scintilla and less than a preponderance." *Masterson*, 309 F.3d at 272 (citation and internal quotes omitted). The Commissioner's findings will be upheld if supported by

substantial evidence.  *Id.*  A finding of no substantial evidence will be made only where there is a conspicuous absence of credible choices or no contrary medical evidence.  *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988) (per curiam) (citation and internal quotes omitted).

In applying the substantial evidence standard, the court may not reweigh the evidence, try the issues *de novo*, or substitute its own judgment for the Commissioner's, even if it believes the evidence weighs against the Commissioner's Decision.  *Masterson*, 309 F.3d at 272.  "[C]onflicts in the evidence are for the Commissioner and not the courts to resolve."  *Id.* (citation and internal quotes omitted); *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993).

    **b.**    **Evaluation Process**

The ALJ evaluates disability claims according to a sequential five-step process: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe medically determinable physical or mental impairment; (3) whether the claimant's impairment(s) meet or equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) whether the impairment prevents the claimant from performing past relevant work; and (5) whether the impairment prevents the claimant from doing any other work.  20 C.F.R. § 404.1520(a)(4).  Once the claimant satisfies his burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant is capable of performing.  *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).  This burden may be satisfied either by reference to the Medical Vocational Guidelines of the regulations, by vocational expert ("VE") testimony, or by other similar evidence.  *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).  Once the Commissioner makes the requisite showing at step five, the burden shifts back to the claimant to rebut the finding

that there are jobs that exist in significant numbers that the claimant could perform.  *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005).

In the present case, the ALJ found that Lamons met "the insured status requirements of the Social Security Act through December 31, 2022." (R. 12).  In addition, the ALJ found that Lamons "ha[d] not engaged in substantial gainful activity since March 1, 2017, the alleged onset date." (R. 12).  At step two, the ALJ found that Lamons "has the following severe impairments: degenerative disc disease of the cervical and lumbar spine, degenerative joint disease of the knee and ankle, obesity, depression, anxiety, and posttraumatic stress disorder (PTSD)." (R. 13).  Further, the ALJ found that "[t]he above medically determinable impairments significantly limit the ability to perform basic work activities as required by SSR 85-28." (R. 13).  At step three, the ALJ found that Lamons did not have an impairment or combination of impairments that met or medically equaled the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. 14).

> Before proceeding to step four, the ALJ found that Lamons:
>
> has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b), lifting 20 pounds occasionally and 10 pounds frequently, standing/walking for 4 hours in an 8-hour workday, and 6 hours in an 8-hour workday, except [Lamons] can perform occasional climbing of ladders, ropes, scaffolds, stairs and ramps; occasional balancing, stooping, kneeling, crouching, and crawling; can understand[,] remember and carry out detailed, but not complex instructions, make basic decisions, concentrate for extended periods, interact with others, respond to changes, and have only occasional contact with the public, co-workers and supervisors.

(R. 15).  At step four, the ALJ determined that Lamons could not perform any past relevant work. (R. 19).  Subsequently, at step five, the ALJ found that "there are jobs that exist in significant numbers in the national economy that [Lamons] can perform." (R. 19).

Accordingly, the ALJ found that Lamons was not disabled within the meaning of the Social Security Act from March 1, 2017, through the Decision date.  (R. 20).

    **c.**    **Analysis**

    *1.*    *The ALJ Properly Considered Lamons's Migraines When Formulating a Limited Range of Light-Work RFC*

Lamons argues that "[t]he objective medical evidence establishes that Lamons is fully disabled and cannot lift more than 10 pounds, crouch, reach overhead bilaterally and cannot carry out detailed instructions due to his physical and mental impairments," and that "[t]he ALJ erroneously disregarded the chronic migraines . . . ."  (ECF No. 13, p. 3).

To support this contention, Lamons highlights his own testimony "that he suffered daily chronic migraines," that "he suffer[ed] dizziness daily," and that he suffered from "chronic migraines . . . ."  (ECF No. 13, p. 3) (citing (R. 36, 38, 43-44)).  In response, the Commissioner argues that "the ALJ acknowledged that [Lamons] reported having headaches and pain but properly determined that these impairments were non-severe . . . [since] the evidence does not support a finding of medically determinable severe migraine headaches."  (ECF No. 16, p. 6) (citing (R. 13)).

It is the province of the ALJ to weigh competing medical opinions.  *See Taylor v. Astrue*, 706 F.3d 600, 602-03 (5th Cir. 2012) ("the determination of residual functional capacity is the sole responsibility of the ALJ").  "[C]onflicts in the evidence are for the Commissioner and not the courts to resolve."  *Masterson*, 309 F.3d at 272 (quoting *Newton*, 209 F.3d at 452).

Here, the ALJ acknowledged that Lamons reported having headaches but found that "[w]hile the claimant received treatment at times for headaches, there was no evidence that the claimant had frequent headaches, such that they would pose work-related limitations."  (R. 13).

Lamons refers to evidence in the record indicating a history of headaches (R. 953) and specific examples of recorded migraines and headaches. *See* (ECF No. 13, p. 4-5). However, some of the medical records to which Lamons cites in support of his position also support the ALJ's decision that the migraines were not severe or frequent enough to pose work-related limitations. Lamons writes that he "was again seen at [William Beaumont Army Medical Center (WBAMC)] clinic for headaches and dizziness." (*Id.* at p. 5) (citing R. 916, 923). But, the portion of the record, to which Lamons cites, shows Lamons "stated that he was not having any . . . headache[s] . . ." and was released without limitations. (R. 923).

The record also includes several clinic visits where Lamons was described as having no migraines or headaches. (R. 1894) (October 23, 2018 clinical report); (R. 1729) (August 28, 2018 screening); (R. 546) (July 19, 2018 screening); (R. 554, 1272) (July 10, 2018 screening); (R. 1775) (June 29, 2018 screening); (R. 435) (December 6, 2017 exam); (R. 1046, 1051) (October 18, 2017 screening); (R. 1077, 1843) (June 7, 2017 screening); (R. 1265) (July 29, 2015 screening). Further, in a VA benefits letter, dated August 4, 2017, Lamons's migraine attacks were described as occurring on average once a month over the last several months. (R. 226).

Accordingly, the Court finds that the evidence in the record does not support the contention that Lamons's migraine headaches were a severe impairment or that they affected the RFC beyond the limitations the ALJ included. *See Carrier v. Sullivan*, 944 F.2d 243, 247 (5th Cir. 1991) (the ALJ properly resolves conflicts in the evidence).

Lamons also argues that the ALJ "erroneously disregarded" the VE's testimony that an applicant who could not concentrate for three quarters of the week or month due to pain could not perform the three jobs that were identified by the VE. (ECF No. 13, p. 3) (citing (R. 59)).

However, the ALJ may reject VE testimony which is based on hypothetical assumptions that ultimately are rejected by the ALJ.  *See Owens v. Heckler*, 770 F.2d 1276, 1282 (5th Cir. 1985).

Substantial evidence in the record supports the ALJ's RFC assessment and final Decision finding that Lamons's migraines were not frequent such that they would pose work-related limitations. Accordingly, the Court finds that the ALJ properly considered Lamons's migraines when formulating a limited range of light-work RFC.

### 2. *The ALJ Appropriately Found that Lamons had no Medically Required Use of a Walker*

Lamons argues that "[t]he ALJ erroneously held that Lamons'[s] use of a walker was medically unnecessary." (ECF. No. 13, p. 5).  To support this contention, Lamons relies upon his own testimony that "he began falling about twice a week and began using a walker." (ECF No. 13, p. 5) (citing (R. 38-39)).  However, the ALJ found "no evidence to support the need for [Lamons] to require a need for a walker to ambulate." (R. 16).  Specifically, the ALJ cited to a clinical report from WBAMC, dated July 2018, where Lamons reported having "no difficulty walking" (R. 483) and to screenings at the Mendoza Soldier Family Care Clinic in October and November 2018, where Lamons was "observed to have a normal gait and stance with unlimited mobility without the use of a walker." (R. 17) (citing (R. 1450, 1673)).

A claimant's RFC is "the most [the claimant] can still do despite [their] limitations."  20 C.F.R. § 404.1545(a)(1).  The responsibility to determine the claimant's RFC belongs to the ALJ. *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995).  In making this determination, the ALJ must consider all the relevant medical and other evidence and determine the claimant's abilities despite his or her physical and mental limitations.  *See* 20 C.F.R. 404.1545(a)(3).  The ALJ must consider the limiting effects of an individual's impairments, even those that are not severe, and any related symptoms.  *See* 20 C.F.R. §§ 404.1529, 404.1545.  The relative weight to be given to the evidence

7

is within the ALJ's discretion. *Chambliss v. Massanari*, 269 F.3d 520, 523 n.1 (5th Cir. 2001) (per curiam). "[T]he ALJ is not required to incorporate limitations in the RFC that he or she did not find to be supported in the record." *Bessey v. Berryhill*, 1:18-CV-000078-AWA, 2019 WL 1431599, at *4 (W.D. Tex. Mar. 29, 2019); *see Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988) (per curiam).

It is the claimant's burden to establish disability and to provide or identify medical and other evidence of his or her impairments. *See* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 404.1512(a). A medically determinable impairment must be established by acceptable medical sources. 20 C.F.R. § 404.1513(a). A claimant's own subjective complaints, without objective medical evidence of record, are insufficient to establish disability. *See* 20 C.F.R. § 404.1529(c)(3).

In order to find that a hand-held assistive device is medically required, "there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)." SSR 96-9p, 1996 WL 374185, at *7.

Lamons has not demonstrated that the use of the walker was medically necessary. In fact, Lamons regularly reported having no pain or no more than moderate pain. *See* (R. 1449, 1616, 1659, 1671, 1690). The ALJ also noted Lamons's participation in physical therapy for his bilateral knees and his decrease in pain with medication. (R. 17) (citing (R. 962)).

The ALJ found that Lamons "was given a rolator [sic] walker with a seat due [to] bilateral knee pain and buckling in September 2018, despite minimal findings on objective imaging." (R. 17) (citing (R. 2022)). In fact, in July 2018, two months prior to being given a walker, Lamons reported no difficulty walking. (R. 17) (citing (R. 483)). Furthermore, the ALJ found it

"significant that [Lamons] was observed to have a normal gait and stance with unlimited mobility without the use of a walker" in October and November 2018, the two months after being given the walker. (R. 17) (citing (R. 1550, 1673)). In sum, the ALJ determined Lamons to have a limitation of combined standing/walking of no more than 4 hours in an 8-hour workday "[g]iven the relatively mild findings on imaging, and the demonstrated improvement with treatment." (R. 17).

Lamons argues that the Fifth Circuit in *Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003) warns against the ALJ "playing doctor" and making their own independent medical assessments. *See* (ECF No. 13, p. 6). Furthermore, Lamons cites to *Newtown*, in which the Fifth Circuit found that the ALJ "improperly" rejected the treating physician's medical opinions "without contradictory evidence from physicians who had examined or treated [the claimant] and without requesting additional information from the treating physician." *Newton v. Apfel*, 209 F.3d 448, 460 (5th Cir. 2000). However, the Commissioner argues that the ALJ did not "play doctor," but instead cited to contrary medical findings and to the lack of findings or observations supporting the medical need for a walker. (ECF No. 16, p. 11); *see also Johnson v. Bowen*, 864 F.2d 340, 348 (5th Cir. 1988) (claimant's testimony can be discounted when the evidence reflects that pain can be remedied or controlled by medication or therapy).

Further, Lamons appears to be arguing that the treating physician's opinion should be given controlling weight. *See* 20 C.F.R. § 404.1527(c)(2) ("If [the ALJ] find[s] that a treating source's medical opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) is well-supported . . . and is not inconsistent with the other substantial evidence . . . , [the ALJ] will give it controlling weight."). However, for claims *filed* after March 27, 2017, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or

9

prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a); *see* (R. 10) (Lamons filed his claim on July 23, 2018).

Accordingly, the Court finds that the ALJ did not err in finding that Lamons had no medically required use of a walker when determining Lamons's RFC.

### 3. The ALJ Properly Considered Lamons's Chronic Pain and Pain Syndrome When Formulating the RFC

Lamons argues that the ALJ "erred in disregarding the extensive objective medical evidence of pain syndrome." (ECF No. 13, p. 6). To support this contention, Lamons first argues that he "testified that his daily pain level was at 7 (on a scale of 1 to 10) and that his mental impairments led to weekly VA counseling," in addition to suffering "chronic pain 25 days out of the month." (ECF No. 13, p. 7) (citing (R. 42, 46)). Further, Lamons contends that the "WBAMC records reflect a history of chronic knee pain" between 2014 and 2016. (ECF No. 13, p. 7). In his Decision, the ALJ did not find that Lamons was "pain-free," but found the evidence did not support that Lamons's "pain was of such frequency, intensity, or duration as to be disabling," and "[t]he evidence of record failed to demonstrate the presence of pathological clinical signs, significant medical findings, or neurological abnormalities which would establish the existence of a pattern of pain of such severity that would contraindicate [Lamons's] engaging in all substantial gainful activity." (R. 18).

"To prove disability resulting from pain, an individual must establish a medically determinable impairment that is capable of producing disabling pain." *Ripley*, 67 F.3d at 556; *see also* 20 C.F.R. § 404.1529(b). In considering the intensity, persistence, and limiting effects of a claimant's symptoms, the ALJ examines all the available evidence. *See* 20 C.F.R. § 404.1529(c)(1). The ALJ must consider whether a claimant's statements about the intensity,

persistence, and limiting effects of their symptoms are consistent with the objective medical evidence. *See* 20 C.F.R. §§ 404.1529(a), (c)(4).

In addition to his testimony, Lamons highlights evidence in the record of incidents of high reported pain levels. (ECF No. 13, p. 7-8) (citing (R. 1725) (September 18, 2018 screening reporting 7 out of 10 pain); (R. 1750) (July 19, 2018 screening reporting 8 out of 10 pain); (R. 486) (July 18, 2018 clinical report indicating 8 out of 10 pain); (R. 555) (July 10, 2018 screening reporting 7 out of 10 pain when sitting, 10 out of 10 pain when standing for a long time)). However, the record also shows that Lamons frequently reported having no pain to moderate pain. *See* (R. 1616) (February 25, 2019 screening reporting 5 out of 10 pain); (R. 1659) (December 14, 2018 screening reporting 0 out of 10 pain); (R. 1671) (November 20, 2018 screening reporting 0 out of 10 pain); (R. 1690) (October 30, 2018 screening reporting 0 out of 10 pain). The ALJ found the lack of significant pain on these occasions to be "grossly inconsistent with [Lamons's] testimony of [having 7 out of 10 pain on average]" and not supportive of any additional RFC restrictions. (R. 18); *see Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994) ("pain constitutes a disabling condition when it is constant, unremitting, and wholly unresponsive to treatment.") (internal citation omitted); *Harrell v. Bowen*, 862 F.2d 471, 481 (5th Cir. 1988) (despite chronic pain syndrome and degenerative disc disease, the ALJ properly determined that the claimant could engage in light work activity).

Finally, Lamons cites to visits to the WBAMC clinic for physical therapy and pain management in July and August of 2016 as evidence of the severity of his pain. (ECF No. 13, p. 8). However, the cited medical records indicate pain levels before treatment ranging from 2 out of 10 to 5 out of 10 and decreased pain levels after treatment ranging from 0 out of 10 to 4 out of

10.  (R. 827-28); *see Johnson*, 864 F.2d at 348 (claimant's testimony can be discounted when the evidence reflects that pain can be remedied or controlled by medication or therapy).

Substantial evidence supports the ALJ's decision that Lamons's pain is not disabling, and Lamons has not shown that his pain requires restrictions greater than those reflected in the ALJ's RFC findings.  *See* (R. 15).  Accordingly, the Court finds that the ALJ properly considered and weighed the evidence of Lamons's chronic pain and pain syndrome when formulating the RFC.

### 4. *The ALJ Properly Assessed Lamons's 100 Percent VA Disability Rating*

Lamons argues that "the ALJ erroneously gave no weight to [the] VA's disability rating." (ECF No. 13, p. 8).  Lamons had "a 100% VA disability rating due to migraines, sleep apnea, chronic adjustment disorder, intervertebral disc syndrome and degenerative arthritis of the spine." (*Id.*) (citations omitted).

The governing Social Security regulation provides that disability decisions by governmental agencies, such as the VA, are not binding on the Commissioner because those decisions are made according to separate rules.  20 C.F.R. § 404.1504.  Prior to an amendment to the regulation in 2017, courts held that a VA rating of disability is "evidence that is entitled to a certain amount of weight and must be considered by the ALJ."  *Chambliss*, 269 F. 3d at 522; *see also Loza v. Apfel*, 219 F. 3d 378, 394-95 (5th Cir. 2000) ("A VA rating of 100 percent service connected disability is not legally binding on the Commissioner, but is evidence that is entitled to great weight and should not have been disregarded by the ALJ.").  However, the regulation was amended in 2017 such that the Commissioner does not need to "provide any analysis in [the] determination or decision about a decision made by any other governmental agency or nongovernmental entity about whether [the claimant is] disabled, blind, employable, or entitled to

any benefits." 20 C.F.R. § 404.1504 (binding all Social Security "claims *filed* . . . on or after March 27, 2017 . . .") (emphasis added).

In the instant case, the amended version of 20 C.F.R. § 404.1504 governs because Lamons filed for disability benefits on July 23, 2018. (R. 199). Therefore, Lamon's reliance upon Fifth Circuit precedents involving Social Security claims filed before March 2017, is not applicable to the instant case. *See* (ECF No. 13, p. 8) (citing *Salmond v. Berryhill*, 892 F. 3d 812, 815 (5th Cir. 2018) (involving a claim filed in 2013); *Lozal*, 219 F. 3d at 380 (involving a claim filed on June 10, 1993)). Accordingly, because the ALJ is not obligated to give any weight or discuss the VA disability rating, the Court finds that the ALJ did not err in giving no weight to Lamons's 100 percent VA disability rating under 20 C.F.R. § 404.1504.

## IV. CONCLUSION

Based on the foregoing, **IT IS HEREBY ORDERED** that the Commissioner's decision denying benefits is **AFFIRMED**.

**SIGNED** and **ENTERED** this 28th day of October, 2020.

*/s/ signature*

**ANNE T. BERTON**
**UNITED STATES MAGISTRATE JUDGE**